The next case on our calendar this morning is United States v. Gasparini. Thank you. Counsel? Good morning, Your Honor. May it please the Court, Paul O'Reilly representing the defendant appellant Fabio Gasparini. The district court improperly applied the four-factor test determining whether the defendant was a serious . . . I'm sorry, this was Judge Gariffas, was it? Yes, Your Honor. Whether the defendant was a serious risk of flight and whether there were any conditions that would reasonably assure the presence of the defendant at trial. The main contested factor here is the weight of evidence, so I'm going to quickly address the other three factors. There was no allegation that the defendant was a risk to the community or would attempt to obstruct justice upon release. As to the character of the defendant, the defendant did not have a criminal record, nor did he have a history of violence or drug or alcohol abuse or health issues. The government's sole allegation against the defendant's character was his lack of ties to the community, which . . . We really focus on the risk of flight. I think that was the basis for the district court's ruling because of the absence of any ties to the community and so on. So maybe you could focus on that aspect of the district court's ruling and tell us why that was . . . It was an abuse of discretion to rely on that. It was abuse of . . . I guess a clear error to find that he did pose a risk of flight. Yes, Your Honor. At many of the conclusions of law, we disagree with as to the weight of the evidence, which is the fourth factor. And the only risk of flight was the sole allegation of a lack of ties to the community that dealt with the person himself, Fabio Gasparini. This wasn't a case where detention was presumptive or crimes of violence where bail was merely permissible. Did he offer a bail package or did he just propose electronic monitoring? At the time, he proposed electronic monitoring only, but we are amenable to a bail package. Did you offer one or have you offered one? We offer one now. One was not offered at the district court level, Your Honor. Uh-huh. And is trial still set for July 24th? It is, Your Honor. Uh-huh. So that's three weeks away, basically. Three and a half weeks. Yes, Your Honor, assuming it doesn't get pushed back. Uh-huh. But do you have any reason to think that it will? Are you intending to ask yourself for a continuance? No, but the government has provided discovery in, I think, four or five separate packages, and I don't know whether any further discovery is coming from the government. Does your client currently have access to the laptop that would seem to be problematic? He has access to the laptop, but the government has provided a server, and the laptop does not have a certain program on its laptop to be able to access the contents of the server. So there's a whole big piece of discovery, which thousands or hundreds of thousands of items that the defendant, my client, cannot see or access. Uh-huh. So you need access to that before you begin trial, so that might prolong, potentially, the period of detention? Well, that could, yes, Your Honor. Yes, it very well could. And it's very important that my client see such things, because he is the person who really has the internet knowledge and the computer, he was a computer IT guy. Well, that is the essence of the charge against him, that he created a botnet. But maybe you could circle back then to why it was wrong for the district court to conclude that he posed a risk of flight. He's Italian, he doesn't have ties here, but yet he compromised, I think they said, 140,000 servers around the world. He was detained in Amsterdam and then extradited here. Why isn't there every reason to think that he would depart at his earliest opportunity? Well, you know, he at first appealed his extradition, but then he willfully submitted to the jurisdiction of this court. And as is stated in the United States v. Khashoggi case, that the defendant, by doing so, albeit a little late, showed a willingness to submit himself to the jurisdiction, which meant he was less of a flight risk. He fought extradition for how long? I believe it was . . . A year? Almost a year, ten months? Ten months, I think, nine or ten months, Your Honor. Mr. Bertolini argued on his behalf that the charges couldn't be sustained, that the motion to dismiss would be successful, but it's been ruled on and the charges are proceeding. Does that affect the strength of the government's case at all? No, not at all. Those were just based on the allegation. There's been no evidence of any payment submitted by the government. There's been invoices which are un-itemized. They don't have evidence of the actual clicks. They have evidence of maybe access, not on a computer, but on a network storage, a network attack storage device, which doesn't record anything, doesn't have a black box, and there's no way of them proving actual auto clicks. In their allegations, in their indictment, the district court, in denying our motion to dismiss, noted that there was one auto click alleged in the whole entire indictment. That's about ten cents' worth of auto clicks, but the court still held that that was a sufficient or a substantial amount of domestic conduct under the three-part test dues to determine whether the buyer fraud statute could be applied domestically, based not in part on the allegations in the indictment, and this is page 69 of the government's appendix, but based upon the government's representations at oral argument that they were going to bring in more evidence of more clicks that went from the U.S., a U.S. computer, to the website abroad, which they have not. Did you get the bill of particulars from the government yet? We have received the bill of particulars from the government, Your Honor. And does it lay out more extensively the allegations? I think it fails to do so, Your Honor. There's no evidence under A-4 that any currency was taken or that any information of value was taken. The Google case, which is the leading case from the Third Circuit on whether this information has value, the Third Circuit said it doesn't. Not only does Internet routing protocol, such as a simple IP address or user agent string, which simply tells a website what kind of browser it has, but the Google case, the court even went further to say a user's Internet history does not have any value. But even apart from that, he's being charged with unlawful intrusion into computers, and the government, I think, has alleged that tens of thousands of servers have been compromised. Even if it hasn't been used to date to produce a particular value, that we have been seeing daily, including just yesterday, I think, the vulnerability that that kind of intrusion can create. Why isn't that a legitimate concern? Because that's not a crime under the statute. There is no criminal trespass, or cyber criminal trespass, where merely stepping onto someone's property and not doing anything more is like a misdemeanor or something. Under A-2 or A-4, the computer intrusion statutes, under A-4 they have to allege that he gained something of value and he had an intent to defraud. Under A-2, they have to allege that he took information. The only information they have listed is, again, the user agent string and the IP address. The mere building of a botnet of this type and affecting an intrusion is not a crime under the statute. Correct. In the PC Yonkers case in the Third Circuit, they have a great quote that says, mere access is not enough. I believe that's also repeated by the Tenth Circuit in the case, the United States versus Willis. Mere access or mere trespass is not enough. There has to be something more. And the PC Yonkers case, the Third Circuit went so far as, we cannot presume that information was looked at or taken based solely on mere access. That it has to be proven. And the government does not have the evidence for that. And so my clients sitting in detention for charges they can't prove. We'll hear from the government. Thank you, Your Honor. Thank you very much. Counsel? May it please the Court. We're prepared to rest on our papers. I do want to correct the record as to one item. Counsel claimed that the defendant himself does not have access to the server, one of the servers that he leased that is owned by a U.S. company. That server was produced to the defendant in exactly the form that the government obtained it in evidence in response to a search warrant from that U.S. company. The format is what's a forensic file. It needs to be forensically examined. Just like in a drug case that you have drugs, in a gun case you have guns, you provide that to the defense and the defense experts, and it requires expertise to properly examine that file. The defense counsel has represented that he's retained two computer science experts. We provided additional discovery. First of all, a full disclosure report from the government's experts about what is on that server, explaining the basis of what we expect to be his testimony. Second, further 3500 material disclosed early so that the defense experts could understand how the analysis was done and use the same tools. And the next day, defense counsel confirmed that his experts do have access to the contents of that server. We have made clear that we are willing to produce the defendant to the courthouse, to a room in the courthouse where the experts can sit down with him and go through those contents, and we've made special arrangements with the MDC so that those experts can bring in their own laptops to the MDC and go through that with the defendant. So he has access to that information. He has access to his own stand-alone laptop. And I'm informed by the MDC that he's had availed himself of every opportunity to review discovery on that laptop to the extent that he desires. Out of the 20 days in June, he checked his laptop and reviewed discovery on 16 days, and for 14 days he was offered the opportunity, and he affirmatively declined. So this is not a case where the defendant is being deprived of something that he needs. Is the July 24 date, as far as you are concerned, as far as the government's concerned, does that look like a fair bet? Yes, ma'am. We are planning to go forward. We're not going to ask for a continuance. And could you also address the point most recently made by counsel for Mr. Gasparini that mere building a botnet and intruding on servers is not a crime, and so this whole proceeding is defective? Sure. It is a crime in a couple of respects. First of all, this botnet was created with the intent to defraud. We've shown that, we've alleged that in the speaking portion of our indictment, and we intend to show that at trial. We've already disclosed all of the discovery that will show that. So in that sense, it's a crime under 1030-A-4. It's a crime under 1030-A-2 because the specific malicious files, the code that we've disclosed to the defense, shows that he was seeking to obtain information, including password files. And we further said in the bill of particulars that he did, in fact, obtain password files. The expert report that I mentioned earlier explains that on that server, there are usernames and passwords. Passwords generally are in an encrypted form, and the defendant was using a program to try and decrypt those passwords and had successfully done so. So there's evidence. Did the botnet also intend to effect a fake autoclick, so to speak? It is. It was installing an affirmative actor. Yes, it was. And that will go towards the intent to defraud the count one charge. In the discovery letter, you mentioned records from PayPal. And did those disclose any profiting that he had from the operation? Yes, Judge Sironi. They go to both the profit and to the money laundering. We have evidence in the e-mail and from the records of an Italian advertising company that the defendant and his co-conspirators obtained money as a result of clicks on these websites, obtained money out of proportion with what you would normally expect with a website that is basically defunct. It is not one that's regularly visited. And then you see that those same individuals, shortly after obtaining that money, used PayPal to route the money back to the defendant, Fabio Gasparini. We see that money laundering through those monetary records. How many servers does the government maintain were compromised by Mr. Gasparini? Right now, based on the logs from the server that we do have and has been disclosed, we're seeing more than 140,000 servers around the world that checked in with this New Jersey server, what we call the New Jersey server. When I say checked in, that means the defendant leased a server from a company headquartered in New Jersey to control his botnet. And so those bots would then check in with that command and control server. And we saw 140,000 bots, slightly more than that, checking in with that server. And so the command and control server, so-called, is based in the United States. The server itself, it's owned by a company headquartered in the United States. As you might imagine, these companies use dynamic storage and have data centers around the country and around the world. So the server itself is not in New Jersey. Very good. Thank you very much. Thank you, Judge. We'll take the appeal under advisement and let you know in due course. Thank you.